UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

    MARY LOU PALEY,                      Case No. 06-10601

                    Debtor.

In Re:

    ROSEMARY A. MILLINGTON            Case No. 06-12046

                    Debtor.

## MEMORANDUM OF LAW

This Memorandum of Law is meant to supplement the Memorandum of Law dated December 14, 2006, and filed in the case with the accompanying affidavit of Mary Lou Paley (Pacer Doc. 16). The Statement of Facts set forth in that Memorandum of Law is substantially the same for this Memorandum of Law as well as the stipulation of facts that the parties previously entered in to (Pacer Doc.11). This court in an Order dated October 15, 2007, citing In re Green, 06-11591, overruled the trustee's objection in both the Mary Lou Paley and Rosemary Millington cases, where the "trustee's objection to confirmation was based upon the debtor's proposed plan term not coinciding with the applicable commitment period pursuant to 11 U.S.C. 1325(b)(1)(b); the court set a briefing schedule with regard to whether the debtors have failed to comply with a good faith requirement under 11 U.S.C. 1325(a)(3)."(Pacer Doc. 29).

## POINT ONE:

## The only requirement in a Chapter 13 plan is that the debtor devote whatever disposable income there is pursuant to Form B22C, commonly known as the "Means Test".

The court in In Re: Alexander stated, "in order to arrive at projected disposable income, one simply takes the calculation mandated by Sec. 1325(b)(2) and does the math." In Re: Alexander, 344 B.R.742, 749. In Alexander, the decision continued:

> "this court agrees with the opinion rendered by the Bankruptcy Court for the Middle District of North Carolina that the debtor's disposable income must be determined under Sec. 1325(b), and not as an element of good faith under 1325(a)(3). In Re: Barr, 341 B.R.181, 186, (Bankr M.D.N.C. 2006) . ." Id. at 752."

Chief Judge Gerling stated in In Re: Rotunda:

> "As noted previously, with the enactment of BAPCPA, the court's discretion to review the totality of circumstances and to determine the reasonableness of debtor's expenses in calculating disposable income has been curtailed, in some instances, by the new provisions that allow, whether or not intentionally, a debtor to propose a plan which provides zero payments to unsecured creditors despite having financial wherewithal to make some payments to them." 349 B.R. 324, 332 (N.D.N.Y. 2006).

It was Congress's decision to exclude social security benefits from the payment to unsecured creditors' claims, even in a Chapter 13 context. Hon. Robert E. Littlefield, Jr. in In Re: Green, an unpublished decision with Case No. 06-11591, states:

> "regarding the instant case, the court must conclude that because there is no disposable income there can be no projected disposable income. Without projected disposable income, the court further concludes that this and similar cases, Sec. 1325(b)(1)(b) ACP is not germane and does not impose a confirmation impediment. It simply makes no sense to invoke 1325(b)(1)(b) and its mandates by pointing to a negative number which will not be received, and would result in no dividend, benefit or protection to the unsecured creditors."

The "do the math" analysis of <u>Alexander</u>, <u>Barr</u> and its progeny, is Mary Lou Paley's argument. Ms. Paley's source of income is from a small part-time job of $129.00 gross per month, social security of $992.00 per month and a pension of $225.00 per month. Ms. Paley's largest source of income, the social security income, is not included on Form B22C, nor is it required to be included. Ms. Paley's income is approximately $33,000.00 below the applicable median family income at the time of filing. Ms. Paley has chosen to include her social security income in her plan. As previously noted, at the time Ms. Paley filed her bankruptcy petition, she was not eligible for a Chapter 7 discharge. As is noted in the <u>Rotunda</u> decision of Judge Gerling,

> "while the court indicated that it could not compel the debtors to include the social security benefits in calculating disposal income, they certainly could voluntarily devote a portion of that income to the plan in order to overcome the feasibility problem," (<u>In Re: Rotunda</u>, 349 B.R. at 332 citing <u>In re Schanuth</u>, 342 B.R. 601, 606 ( Bankr. W.D. Mo. 2006).

This court ruled and it is the law of this case based upon the October 15, 2007 Order, that a plan of less than 36-months is available to a debtor in the Northern District of New York in light of this courts recent decision in <u>Green</u> 06-11591 (Pacer Doc.29). Simply put, Congress intended that the Means Test, known as Form B22C, and the Means Test formula to end judicial discretion relative to the analysis of whether or not the debtors are proposing their plan in good faith. The only analysis is Form B22C, and that is what Congress intended as Judge Gerling noted in the <u>Rotunda</u> decision.

> "If this was not Congress's intent, then it is up to Congress to rectify the situation. It was also Congress' decision to exclude social security benefits from the payment of unsecured creditors' claims, even in a Chapter 13 context. This is a policy decision that the court may perhaps questions but it cannot alter. That is the role of Congress". <u>In Re: Rotunda</u>, 342 B.R. at 333.

## POINT TWO:

## Mary Lou Paley's plan is proposed in good faith assuming there is a good faith requirement under Sec. 1325(a).

Pursuant to 11 U.S.C. 1325(a)(3) of the bankruptcy code, "the plan must be proposed in good faith and not by any means forbidden by law." In POINT ONE supra, the debtor's argument has been that since the debtor has complied with the Means Test, there is no good faith analysis required. Turning to courts that have interpreted good faith, there are two types of analyses. One line of cases cites enumerated factors that are set forth in the In Re Lewis, 347 B.R. 769(Bank. Kan., 2006). The trustee also cited pre-BAPCPA cases, one specifically Judge Gerling, In Re: Corino, 191 B.R. 283 (N.D.N.Y. 1995), See also In Re Eustis, 695 F.2d 311 (8th Cir. 1982). Other cases have taken more of a totality of circumstances analysis. See In re LaSoto, 351 B.R. 56 (Bankr. W.D.N.Y. 2006). These analyses are largely facts and circumstances analyses that deal with the specific factors of the filing and plan proposed.

There is no question in the case of Mary Lou Paley that under these analyses her plan is unquestionably filed in good faith. There is absolutely no admissible evidence put forth by the trustee in this case that shows that Ms. Paley has not filed her plan in good faith. Ms. Paley has filed a sworn petition, setting forth facts. Parties have stipulated to facts. Ms. Paley has signed a plan. There has been an affidavit submitted by Ms. Paley in December of 2006 detailing certain items.

Turning to the factors that were enumerated in the Lewis case and the cases that followed that analysis, Ms. Paley is $33,000.00 below the applicable median family income. Congress has determined that aside from the fact that it had been seven and a

half years from her Chapter 7 filing, that she would have been entitled to file Chapter 7 and pay nothing back to her unsecured creditors. Congress mandated a formula under Form B22C as a bright line test as to what Ms. Paley could afford. There is no dispute that she who would qualify for a Chapter 7 if she had not filed a Chapter 7 bankruptcy seven and half years earlier. There is no non-exempt property for liquidation. Ms. Paley's petition contains entirely unsecured debt aside from her car loan, and there is no attempt for a cram-down of her vehicle. Ms. Paley drives a 2003 Hyundai Accent, which at the time of filing had 41,700 miles. Ms. Paley had a modest amount of money in her KeyBank checking account. She has a small 401(k), modest clothing and modest household items. Ms. Paley does not own real property. Ms. Paley is 76-years old, has suffered with breast cancer and hospital issues and is undergoing radiation treatment. Ms. Paley has also suffered a heart attack. Despite her social security and pension benefits, Ms. Paley needs to supplement her income with a small part-time job. Therefore, Ms. Paley's likelihood of future employment increases is non-existent, given her advancing age and health issues.

Ms. Paley has made the nine payments that she proposed to make under her Chapter 13 plan. The plan is consummated, and if confirmed would be complete upon confirmation. There has been no dispute as to the veracity of Ms. Paley's petition. There has been no attempt in the plan to treat one class of creditors preferentially over another class of creditors. There has been not attempt to modify secured claims. The debtor had filed a Chapter 7 bankruptcy seven and one half years ago, and this is her first Chapter 13 filing.

Ms. Paley's stated motivation was to deal with the harassment she faced from creditors by way of phone calls and correspondence. The burden is no greater for a zero-percent dividend plan than it would be if creditors were to be paid by the trustee. In fact, it is easier for the trustee to administer a zero percent case. There is no argument that the debtor has not proposed this plan in good faith. There is no likelihood that Ms. Paley will have an increase in earning potential.

Ms. Paley is an elderly woman living with health problems living on a fixed income. It does not seem right, nor just, to require Ms. Paley, given the facts and circumstances of her case, to deny her plan for not being in good faith. Congress has specifically excluded social security from the B22C form. Ms. Paley has voluntarily chosen to include her social security but not required to do so which demonstrates extreme good faith to the bankruptcy process. This court already confirms Chapter 13 cases that pay only the debtor's attorney and the Chapter 13 trustee and pay no dividend to unsecured creditors. Congress intended this result when establishing a means test. Even a totality of circumstances argument as is relied on in <u>LaSota</u> supports Mary Lou Paley. The same factors enumerated in Lewis and are dealt with above also apply in the <u>LaSota</u> case. <u>LaSota</u> appears to be a case that laments the change in the law, and wishes the court had the discretion to review Schedules I and J as a continuation of the Means Test: that is not the law, nor is it what Congress intended.

Dated: 11/13/07

James E.D. Doern
Rodriguez & Doern, PLLC
100 West Ave.
Saratoga Springs, NY 12866
(518) 581-8441